No. 21-1414 & No. 22-1027

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JANE DOES 1-11, and JOHN DOES 1, 3-7,
Plaintiffs-Appellants,

v.

THE BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO, et al.,
Defendants-Appellees.

On Appeal from the United States District Court
For the District of Colorado

The Honorable Judge Raymond P. Moore
D.C. 1:21-cv-02637-RM-KMT

**DEFENDANTS-APPELLEES' RESPONSE BRIEF**
***(Oral Argument is not Requested)***

PHILIP J. WEISER
Attorney General
JACQUELYNN RICH FREDERICKS*
First Assistant Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
GRANT T. SULLIVAN*
Assistant Solicitor General
MEGAN PARIS RUNDLET*
Senior Assistant Solicitor General
1300 Broadway, 10th Floor
Denver, Colorado 80203
Tel: (720) 508-6000
kit.spalding@coag.gov;
jacquelynn.richfredericks@coag.gov;
grant.sullivan@coag.gov;
megan.rundlet@coag.gov

HERMINE KALLMAN*
Special Assistant Attorney General
University of Colorado
Office of University Counsel
1800 Grant St., Suite 700
Denver, CO 80203
Tel: 303 860-5691
hermine.kallman@cu.edu

MATTHEW J. SMITH*
GREGORY GOLDBERG*
Holland & Hart, LLP
555 17th Street, Suite 3200
Denver, CO 80202
Tel: (303) 295-8000
mjsmith@hollandhart.com
ggoldberg@hollandhart.com

*Counsel of Record

## TABLE OF CONTENTS

STATEMENT OF RELATED CASES (10th Cir. R. 28.2(C)(3)) ...........................1

PRELIMINARY STATEMENT ............................................................................1

JURISDICTIONAL STATEMENT ........................................................................4

STATEMENT OF THE ISSUES PRESENTED......................................................6

STATEMENT OF THE CASE................................................................................6

STANDARDS OF REVIEW...................................................................................8

    I.      Standards Governing Appellate Review of Preliminary Injunctions........8

    II.     Mootness Standard ......................................................................9

    III.    Preliminary Injunction Standard  .........................................................10

BACKGROUND ..................................................................................................11

    I.      COVID-19 ..........................................................................................11

    II.     COVID-19 Vaccines ...........................................................................12

    III.    The September 1 and September 24 Policies .........................................14

    IV.    The September 24 Policy & Employees..................................................17

    V.     The September 24 Policy & Students.....................................................21

ARGUMENT ........................................................................................................23

    I.      Plaintiffs' request for injunctive relief related to the September 1 Policy is moot. .............................................................................................23

    II.     Plaintiffs are unlikely to succeed on the merits......................................26

        A. The court properly applied rational basis review...............................26

           1.  The September 24 Policy is neutral on its face and as applied......27

ii

# TABLE OF CONTENTS

2.  The September 24 Policy is generally applicable. ........................32

B.  The September 24 Policy survives rational basis review....................35

C.  The September 24 Policy also satisfies strict scrutiny. .......................39

III.    Plaintiffs cannot establish irreparable harm. ..............................................42

IV.    The balance of harms and public interest weigh strongly in favor of denying the relief requested by Plaintiffs.................................................43

CONCLUSION ..................................................................................................45

CERTIFICATE OF COMPLIANCE.......................................................................47

CERTIFICATE OF SERVICE ................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulhaseeb v. Calbone,*
  600 F.3d 1301 (10th Cir. 2010) ............................................9

*Am. Concrete Agric. Pipe Ass'n v. no-Joint Concrete Pipe Co.,*
  331 F.2d 706 (9th Cir. 1964)...............................................5

*Am.'s Frontline Doctors v. Wilcox,*
  2021 WL 4546923 (C.D. Cal. July 30, 2021).....................................36

*Austin v. U. S. Navy Seals 1-26,*
  2022 WL 882559 (U.S. Mar. 25, 2022)..............................................41

*Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC,*
  562 F.3d 1067 (10th Cir. 2009) ............................................10

*Biden v. Missouri,*
  142 S. Ct. 647 (2022) ...........................................................16

*Boy Scouts of Am. v. Dale,*
  530 U.S. 640 (2000)...............................................................8

*Brumfiel v. U.S. Bank,*
  2013 WL 12246738 (D. Colo. May 16, 2013)................................4, 5

*Caddo Nation of Okla. v. Wichita & Affiliated Tribes,*
  877 F.3d 1171 (10th Cir. 2017) ............................................6

*Church v. Polis,*
  2020 WL 9257251 (10th Cir. Dec. 23, 2020)....................................39

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993).............................................. 27, 28, 30

*Denver Bible Church v. Azar,*
  494 F. Supp. 3d 816 (D. Colo. 2020)....................................38

iv

# TABLE OF AUTHORITIES

*Dixon v. De Blasio*,
 2021 WL 4750187 (E.D.N.Y. Oct. 12, 2021)......................................................36

*Dixon v. DeBlasio*,
 2022 WL 961191 (2d Cir. March 28, 2022) .......................................................36

*Doe v. San Diego Unified Sch. Dist.*,
 19 F.4th 1173 (9th Cir. 2021) ...................................................... 29, 30, 32, 33, 36

*Does 1-6 v. Mills*,
 16 F.4th 20 (1st Cir. 2021) ..................................................................... 28, 33, 36

*Edwards v. California*,
 314 U.S. 160 (1941) ..............................................................................................39

*Emp. Div. v. Smith*,
 494 U.S. 872 (1990) ....................................................................................... 26, 27

*Fish v. Kobach*,
 840 F.3d 710 (10th Cir. 2016) ....................................................................... 10, 43

*Fleming v. Gutierrez*,
 785 F.3d 442 (10th Cir. 2015) ...............................................................................6

*Free the Nipple Fort Collins v. City of Fort Collins*,
 916 F.3d 792 (10th Cir. 2019) ...............................................................................8

*Fulton v. City of Philadelphia*,
 141 S. Ct. 1868 (2021) .................................................................................... 28, 33

*Harris v. Univ. of Mass., Lowell*,
 2021 WL 3848012 (D. Mass. Aug. 27, 2021) ....................................................36

*Kane v. De Blasio*,
 19 F.4th 152 (2d Cir. 2021)........................................................................... 35, 36

*Klaassen v. Trs. Of Ind. Univ.*,
 549 F. Supp. 3d 836 (N.D. Ind. July 18, 2021)............................................ 29, 36

# TABLE OF AUTHORITIES

*Marshall v. United States*,
    414 U.S. 417 (1974) ....................................................................................38

*McAlpine v. Thompson*,
    187 F.3d 1213 (10th Cir. 1999) ..............................................................9

*Mrs. Field's Franchising, LLC v. MFGPC*,
    941 F.3d 1221 (10th Cir. 2019) ......................................... 8, 11, 26, 31

*N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*,
    854 F.3d 1236 (10th Cir. 2017) .......................................................3, 38

*Nken v. Holder*,
    566 U.S. 418 (2009) ....................................................................................43

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ......................................................................................9

*Prairie Band of Potawatomi Indians v. Pierce*,
    253 F.3d 1234 (10th Cir. 2001) ............................................................42

*Rezaq v. Nalley*,
    677 F.3d 1001 (10th Cir. 2012) ..............................................................9

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010) ........................................ 5, 9, 23, 25, 26

*Sch. Bd. of Nassau Cnty. v. Arline*,
    480 U.S. 273 (1987) ....................................................................................38

*Schrier v. Univ. of Colo.*,
    427 F.3d 1253 (10th Cir. 2005) ................................................... 10, 37

*Shrum v. City of Cowetta*,
    449 F.3d 1132 (10th Cir. 2006) ............................................................31

*Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*,
    4 F.4th 747 (9th Cir. 2021) ....................................................................36

vi

# TABLE OF AUTHORITIES

*South Bay United Pentecostal Church v. Newsom*,
  141 S. Ct. 716 (2021) .............................................................30

*U.S. Navy Seals 1-26 v. Biden*,
  2022 WL 594375 (5th Cir. 2022) .......................................41

*Valdez v. Grisham*,
  2021 WL 4145746 (D.N.M. Sept. 13, 2021) ......................36

*We The Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021).................................. 27, 36, 43

*Wyoming v. U.S. Dep't of Agric.*,
  414 F.3d 1207 (10th Cir. 2005) .......................................... 10

**Regulations**

6 Colo. Code Regs. § 1011-1:2-12.2 ......................................14

42 C.F.R. § 482.42 ...................................................................16

**Rules**

10th Cir. R. 28.2(C)(3)...............................................................1

**Other Authorities**

https://www.cuanschutz.edu/coronavirus/updates#ac-chancellors-message-masks-boosters-campus-protocols-testing-feb-28-2022-0,
  *last visited* Apr. 18, 2022 .......................................... 14, 22

## STATEMENT OF RELATED CASES
### (10th Cir. R. 28.2(C)(3))

This is a consolidated appeal from the denial of two preliminary injunction motions by the U.S. District Court. The Court consolidated Plaintiffs' first appeal, Case No. 21-1414, into Plaintiffs' second appeal, Case No. 22-1027 (Doc. No. 010110640819).

## PRELIMINARY STATEMENT

During the height of the ongoing, deadly COVID-19 global pandemic, seventeen University of Colorado Anschutz Medical Campus (the "University") employees and students asked the District Court to relieve them from the need to comply with the University's COVID-19 Vaccination Policy #3012 (the "September 24 Policy"). That policy allows employees to request a religious exemption and allows employees and students to request a medical exemption. At the same time, any person with patient treatment responsibilities (such as doctors and nurses) or whose job duties or coursework require in-person interaction with others on campus *must* take the vaccine to safeguard patient, provider, student, and community health and safety. If someone is unable or unwilling to take the vaccine—for either a religious or a medical reason—they are not permitted to work in facilities with medical patients. Here, each Plaintiff requested religious exemption from the September 24 Policy's vaccination requirement.

Under the September 24 Policy, the University carefully considered whether each employee-Plaintiff could be accommodated without undue hardship to the health, safety, and welfare of patients, other employees, and students, and thus, to the University. The University accommodated six Plaintiffs: Jane Does 4 and 6 and John Does 3, 5, and 7 were all granted religious accommodations for remote work, and John Doe 4 was granted a religious accommodation that permits him to work fully isolated on campus. Jane Does 2[1] and 9[2] separated from the University prior to the implementation of the September 24 Policy, and neither was reviewed under that policy. After briefing in the District Court, Jane Doe 7 took the vaccine. Ultimately, five employee-Plaintiffs could not be accommodated due to undue

---

[1]  Because Jane Doe 2 separated from the University prior to the implementation of the September 24 Policy, she was not reviewed under that policy. If the University were to review Dr. Jane Doe 2 under the September 24 Policy, it is unlikely to find that she could perform the necessary in-person core patient care duties as a pediatric anesthesiologist while unvaccinated without creating an undue hardship to the University. Indeed, the University delineated that precise reasoning in its denial of Dr. Jane Doe 2's accommodation request under the September 1 Policy. App.Vol. VI 1280-81.

[2]  On September 20, 2021, Jane Doe 9 was terminated (effective October 2, 2021) due to her decision to come to the Anschutz Campus unmasked and unvaccinated contrary to University policy. App.Vol. VI 1279, 1282-83, 1383; Op. Br. at 27. Thus, Jane Doe 9's own conduct led to her termination before she could be reevaluated under the September 24 Policy.

hardship to the University, and three student-Plaintiffs are ineligible for a religious exemption considering the scope of Title VII of the Civil Rights Act of 1964.

Dr. Jane Doe 1 and John Doe 1 also challenge the District Court's denial of their request to enjoin the University's prior vaccination policy, effective September 1, 2021 (the "September 1 Policy"), which was in place for roughly three weeks before it was superseded by the September 24 Policy. Plaintiffs filed their initial Complaint five days after the September 24 Policy was implemented.

On appeal, Plaintiffs argue facts and evidence that were not before the District Court when it denied Plaintiffs' motions for preliminary injunction. The Court must disregard this newly offered evidence in determining whether the District Court abused its discretion. *See N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1240 (10th Cir. 2017). Thus, Plaintiffs may not rely on current conditions and post-injunction events to argue that the District Court abused its discretion.

## JURISDICTIONAL STATEMENT

Defendants agree with Plaintiffs' Jurisdictional Statement as it pertains to Case No. 22-1027 but disagree that the Court has jurisdiction over Case No. 21-1414 because that appeal is moot.[3]

Plaintiffs filed successive appeals challenging the District Court's denials of two motions seeking to enjoin the University's enforcement of its policies requiring medical campus employees and students to receive a COVID-19 vaccine. In Case No. 21-1414, Plaintiffs sought to enjoin the University's September 1 Policy. The District Court denied the requested injunction as moot since that policy had been repealed and replaced on September 24, 2021, *before* Plaintiffs filed suit. In Case No. 22-1027, Plaintiffs amended their complaint to include the September 24 Policy and filed a renewed motion to enjoin both the September 1 Policy and the September 24 Policy. The District Court denied the renewed motion.

Plaintiffs' election to file their Amended Complaint and Renewed Motion for Preliminary Injunction necessarily extinguished the controversy stemming from their prior request for injunctive relief. *See Brumfiel v. U.S. Bank*, 2013 WL

---

[3] Defendants raised these arguments in their Motion to Dismiss Case No. 21-1414 as Moot filed on February 17, 2022, *see* Doc. No. 010110647011, which is still pending before the Court.

4

12246738, at *1 (D. Colo. May 16, 2013) ("Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot."). When a motion tied to a superseded complaint is rendered moot, "[i]t follows that the appeal from the order . . . is moot." *Am. Concrete Agric. Pipe Ass'n v. no-Joint Concrete Pipe Co.*, 331 F.2d 706, 708 (9th Cir. 1964).

The Court does not have jurisdiction over Case No. 21-1414 since enjoining the University from enforcing the September 1 Policy would have no effect in the real world. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1112 (10th Cir. 2010) (concluding that a superseding biological opinion mooted environmental groups' prayer for injunctive and declaratory relief based on earlier opinions). Since the September 1 Policy is no longer in effect, and as Plaintiffs Dr. Jane Doe 1 and John Doe 1's original complaint and request to enjoin the September 1 Policy were superseded by the filing of the Amended Complaint and the renewed request for injunction, the Court cannot grant any effectual relief to those two Plaintiffs in Case No. 21-1414.

Moreover, the relief requested by all Plaintiffs in the second appeal (Case No. 22-1027) would grant them everything Dr. Jane Doe 1 and John Doe 1 seek in the first, also rendering Plaintiffs' first appeal moot. Thus, the Court should

dismiss Case No. 21-1414 for lack of jurisdiction to avoid issuing an advisory

opinion. *See Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171,

1176 (10th Cir. 2017); *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015).

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the District Court properly denied as moot Plaintiffs' request for a

preliminary injunction enjoining enforcement of the September 1 Policy, which

had been repealed and replaced by the September 24 Policy.

2.      Whether the District Court properly denied Plaintiffs injunctive relief where

Plaintiffs failed to demonstrate a likelihood of success on the merits of their

constitutional claims, failed to show irreparable harm under the September 24

Policy, and failed to demonstrate that the public interest weighs in favor of

enjoining enforcement of the September 24 Policy.

## STATEMENT OF THE CASE

This appeal arises from the District Court's denial of Plaintiffs' requests to

enjoin the University's enforcement of successive policies requiring employees

and students on the University's medical campus to receive COVID-19

vaccinations. Initially, two Plaintiffs sought an order enjoining the University's

September 1 Policy and requiring the University to grant their requested religious

exemptions and to revoke the University's denial of their exemption requests.

6

App.Vol. I 188. The District Court denied the requested injunction as moot since that policy had been repealed and replaced by the September 24 Policy before Plaintiffs filed suit. App.Vol. III 624. That ruling forms the basis of the appeal in Case No. 21-1414. App.Vol. V 1259.

The original two Plaintiffs, joined by 15 others, then filed an amended complaint and renewed their motion to enjoin the University's enforcement of both the September 1 and September 24 Policies. App.Vol. IV 879, 968. The District Court denied the renewed motion, finding that Plaintiffs had failed to show a clear right to injunctive relief or meet the high bar for a disfavored injunction. App.Vol. VII 1663. That ruling forms the basis of the appeal in Case No. 22-1027. App.Vol. VII 1676.

The two appeals have been procedurally consolidated (Doc. No. 010110640819). The Court has denied Plaintiffs' motion for injunction pending appeal (Doc. No. 10110669493). Because the September 1 Policy is no longer in effect, and because Plaintiffs' request to enjoin that policy was superseded by Plaintiffs' filing of the Amended Complaint and the renewed request for preliminary injunction, the University has moved to dismiss Case No. 21-1414 as moot (Doc. No. 010110647011).

## STANDARDS OF REVIEW

### I.    Standards Governing Appellate Review of Preliminary Injunctions

The Court reviews the denial of a preliminary injunction for an abuse of discretion. *Mrs. Field's Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). "A district court's decision crosses the abuse-of-discretion line if it rests on an erroneous legal conclusion or lacks a rational basis in the record for the ruling. The Court examines the court's factual findings for clear error and its legal conclusions de novo." *Id.* at 1232-33 (quoting *Free the Nipple Fort Collins v. City of Fort Collins*, 916 F.3d 792, 796-97 (10th Cir. 2019)).

The Court is not, as Plaintiffs contend, "obligated to independently review the factual record to ensure that the [district] court's judgment does not unlawfully intrude on free [exercise of religion]." Op. Br. at 37 (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648-49 (2000)). The *Boy Scouts of America* standard of review applies only to "a First Amendment case where the ultimate conclusions of law are virtually inseparable from findings of fact," which is not the case here. 530 U.S. at 648-49. Plaintiffs have not argued, much less established, that the District Court's ultimate conclusions of law are "virtually inseparable" from its findings of fact such that *Boy Scouts of America* would apply.

8

## II.     Mootness Standard

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow*, 601 F.3d at 1109 (cleaned up). "When it becomes impossible for a court to grant effective relief a live controversy ceases to exist, and the case becomes moot." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quotation marks omitted); *accord McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999) (mootness applies when factual developments render a dispute "no longer live and ongoing," such that a decision on the merits will not "affect[] the behavior of the defendant toward the plaintiff"). Without a live concrete controversy, the Court lacks jurisdiction to consider claims. *Rio Grande Silvery Minnow*, 601 F.3d at 1109.

"When prospective equitable relief is requested, the requesting party must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Rezaq v. Nalley*, 677 F.3d 1001, 1008-10 (10th Cir. 2012). "Past exposure to illegal conduct does not itself show a present case or controversy regarding the injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). "The crucial question is whether granting a present determination of the issues will have some

9

effect in the real world." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005).

## III.    Preliminary Injunction Standard

Because injunctive relief is an extraordinary remedy, Plaintiffs' right to such relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Courts "disfavor" preliminary injunctions that would alter the status quo or mandate action by the defendant. *Id*. at 1258-59; *see also* Op. Br. at 40 ("Where, as here, Plaintiffs seek a mandatory injunction requiring Defendants to take affirmative steps restoring the status quo, they must make a 'strong showing' that they're likely to succeed on the merits and the balance of harm weighs in their favor."). "To get a disfavored injunction the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [Plaintiffs] must make a 'strong showing' that these tilt in [their] favor." *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009)).

As this Court is aware, to obtain injunctive relief, Plaintiffs must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the

preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Mrs. Field's Franchising, LLC*, 941 F.3d at 1232.

## BACKGROUND

### I.    COVID-19

COVID-19 is a deadly infectious disease caused by SARS-CoV-2, a novel coronavirus that spreads through respiratory droplets and particles that contain the virus. App.Vol. VI 1270, 1317. People of any age may contract and transmit COVID-19 and may suffer severe illness or death or incur long-term, ongoing health problems. App.Vol. VI 1317-18. Many face increased risk of severe illness or death, including the pregnant, the immunocompromised, and persons with heart conditions, cancer, diabetes, or kidney, liver, or lung disease. App.Vol. VI 1318.

When the District Court considered Plaintiffs' motions, the United States had recorded approximately 48.5 million cases of COVID-19 and nearly 780,000 deaths. App.Vol. VI 1318, 1381. Colorado had over 830,300 confirmed cases and approximately 9,500 deaths. App.Vol. VI 1318.

At the time, the situation in Colorado was critical. The pandemic had begun a stark upward turn in September 2021 and projections showed increasing infections, hospitalizations, and deaths. App.Vol. VI 1318-19. In September 2021,

11

experts predicted that "approximately 1 in every 99 Coloradoans were infectious, which was in the upper range of prevalence rates of infection in 2021." App.Vol. VI 1315-16. On October 31, Governor Polis signed an executive order authorizing the Colorado Department of Public Health and Environment to order hospitals to transfer or cease admission of patients to respond to the growing disaster. App.Vol. VI 1319. By November 2021, approximately 93% of acute care hospital beds and 94% of ICU hospital beds were in use, App.Vol. VI 1320, and experts estimated that one in every 48 Coloradans was infectious with COVID-19. App.Vol. VI 1316.

## II.    COVID-19 Vaccines

Vaccination is "the path to safeguard the University's employees, students, and patients to the fullest extent possible." App.Vol. VI 1325-26, 1345. Three COVID-19 vaccines are available to Coloradans, for free; these vaccines "provided a safe and effective path for pandemic control." App.Vol. VI 1321-22.

The COVID-19 vaccines have proven safe and effective, with over 475 million doses administered in the United States at the time of briefing below. App.Vol. VI 1321, 1323, 1382. Peer-reviewed scientific evidence substantiates that vaccinated persons are less likely to be infected or to transmit the virus to others and enjoy substantially decreased chances of hospitalization or death. App.Vol. VI

1323. Vaccination is the only safe means of controlling spread and further mutations of the SARS-CoV-2 virus to bring the worldwide pandemic to an end. App.Vol. VI 1321, 1345, 1368-69, 1372. No other intervention has a level of effectiveness approaching vaccination. App.Vol. VI 1321-22, 1345. It is the most effective means of protecting the most vulnerable, including children and the immunocompromised, whom the University's employees and students serve as medical providers. App.Vol. VI 1345-46, 1356, 1371-72.

Although nonpharmaceutical interventions (*i.e.*, masking) can be layered to reduce transmission, none—save vaccination—reduces the severity of COVID-19. App.Vol. VI 1323. In December 2021, 84% of those hospitalized due to COVID-19 were unvaccinated. *Id*. This—coupled with the continued inability to vaccinate children under age 5—means that the rate of vaccination attained by staff in medical-care settings is reduced by the introduction of patient and visitor populations. And although people may also develop some temporary "natural" immunity through infection, that immunity is non-durable. App.Vol. VI 1324. Hence, achieving the highest possible vaccination rate amongst healthcare workers and others on-campus is critical to patient and community safety. App.Vol. VI 1325-26.

### III.  The September 1 and September 24 Policies

The University of Colorado Anschutz Medical Campus in Aurora, Colorado houses numerous health sciences schools and hospitals (together, the "Anschutz Campus"). App.Vol. VI 1347. Aurora falls into Adams, Arapahoe, and Douglas Counties, which were recognized as "high" risk for community transmission when this matter was before the District Court. App.Vol. VI 1320.

After the Colorado Board of Health issued a rule requiring that all staff in healthcare facilities, including students, be vaccinated, 6 Colo. Code Regs. § 1011-1:2-12.2, the University adopted the September 1 Policy to require vaccination of all individuals who work or learn on the Anschutz Campus or in connection with Anschutz programs. App.Vol. VI 1348; Appellants' Mot. for Inj. Pending Appeal and for Expedited Appeal and Briefing Schedule Ex. 2, Doc. No. 010110644451, at 104-08. As infections and hospitalizations continued to rise sharply, the University then repealed and replaced the September 1 Policy with the September 24 Policy. App.Vol. VI 1348, 1374-79.

The September 24 Policy, which remains in effect,[4] provides medical and religious exemptions where required by federal law. Specifically, as required by

---

[4] The University has since made and communicated limited updates to the September 24 Policy. *See* https://www.cuanschutz.edu/coronavirus/updates#ac-chancellors-message-masks-boosters-campus-protocols-testing-feb-28-2022-0.

14

the ADA and the Rehabilitation Act, students and employees may request an accommodation for a medical condition. App.Vol. VI 1376-78; Appellees' Resp. to Appellants' Mot. for Inj. Pending Appeal Ex. T, Doc. No. 010110648416, at 237. The September 24 Policy also requires the University to consider employees' requests for accommodation based upon their sincerely held religious beliefs consistent with Title VII.[5] *Id*., Ex. T at 238. Finally, the September 24 Policy eliminated the September 1 Policy's requirement that a religious belief be based on a religion "whose teachings are opposed to all immunizations." *Id.,* Ex. T at 237; App.Vol. VI 1348-49. Notably, the September 24 Policy became effective before Plaintiffs filed their complaint and has been in place and consistently applied for more than seven months, and the University has no intention of reintroducing the September 1 Policy. App.Vol. VI 1349-50; Appellants' Surreply to Reply to Resp. to Appellants' Mot. for Inj. Pending Appeal ("Surreply") Ex. BB, Doc. No. 010110654461, ¶¶ 15-16.

---

Specifically, boosters are not required, although those who have taken the booster are not required to mask indoors, except in clinical settings. The core components of the September 24 Policy, including the requirements around primary vaccination and exemptions, remain unchanged.

[5] The September 1 Policy inadvertently authorized religious accommodations for students even though Title VII applies only to employees, not students. App.Vol. VI 1348-49. The September 24 Policy corrected that oversight. *Id.*

15

The September 24 Policy's tripartite goals are to safeguard patient and community health, limit transmission of the virus, and reduce staffing shortages wrought by illness among providers and staff, which jeopardize patient care and overburden healthcare resources.[6] App.Vol. VI 1349-50. As such, exemptions are narrow. When the District Court considered this case, the University had received 74 medical exemption requests and granted 29 (18 temporary and 11 permanent). App.Vol. VI 1365. In contrast, the University had received more than 200 religious exemption requests. App.Vol. VI 1329. The review process for all requests is identical, App.Vol. VI 1351-53, and if the requestor cannot be accommodated with either fully remote or fully isolated work to prevent undue hardship, the request is denied.[7] App.Vol. VI 1353.

---

[6] The September 24 Policy is consistent with the rule that all "hospital staff, who provide any care, treatment, or other services for the hospital and/or its patients," including students, are fully vaccinated against COVID-19, 42 C.F.R. § 482.42(g)(1)(iii), which has been upheld by the Supreme Court:

> [E]nsuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the "very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19."

*Biden v. Missouri*, 142 S. Ct. 647, 652 (2022) (quotation omitted).

[7] Plaintiffs' vague allegation that "individuals" with medical exemptions were treated more favorably is unsupported. Op. Br. at 22. Two students who were granted medical exemption under the September 1 Policy were mistakenly

### IV.    The September 24 Policy & Employees

After adopting the September 24 Policy (five days *before* this suit was filed), the University undertook a thorough review of current employees' requests for religious accommodations. App.Vol. VI 1328. That review was independent of any determinations made under the September 1 Policy; in fact, the University appointed independent reviewers who had not previously considered requests under the prior policy. App.Vol. VI 1328; 1351.

Under the September 24 Policy comprehensive review process, the Associate Vice Chancellor and Chief Human Resources Officer first reviewed each accommodation request to confirm it was based on a sincerely held religious belief. App.Vol. VI 1328-29. Next, the Human Resources Principal Professional worked with the appropriate supervisor(s) to evaluate, based upon the employee's position and duties, whether an accommodation was possible without undue hardship to the University. App.Vol. VI 1328-29, 1351-52. An undue hardship arises when an employee's duties require in-person work, because unvaccinated individuals

---

permitted on campus, App.Vol. VI 1298-99, 1392-93, but the University corrected that error to ensure that no unvaccinated employees or students are permitted to work with immunocompromised patients. App.Vol. VI 1299, 1392-93.

threaten the health and safety of the campus community, which includes medically fragile patients. *Id.*

This review was both time and labor intensive and required several weeks to administer in an appropriately deliberate and thorough manner. App.Vol. VI 1328-29, 1351-53. This approach was necessary to fully evaluate each employee's core job duties in partnership with their immediate supervisors in order to ascertain if and how that person could be accommodated. *Id.* This sort of careful deliberation was necessary both to do justice to each employee's sincerely held beliefs and to ensure that the University maintained a safe and healthy environment for the thousands of vulnerable patients obtaining care on campus each day. App.Vol. VI 1328-29, 1347-50, 1351-53.

Although Plaintiffs object to the timeliness of the process, the University's deliberate reevaluation under the September 24 Policy yielded full accommodation for six employee-Plaintiffs. App.Vol. VI 1330-41. Specifically, the University granted Jane Does 4 and 6 and John Does 3, 5, and 7 religious accommodations under the September 24 Policy because their work can be performed remotely. App.Vol. VI 1330-38, 1340-41. Likewise, the University granted John Doe 4 a religious accommodation because he could perform his work fully isolated on campus. App.Vol. VI 1339.

Accommodations were denied only for those employee-Plaintiffs whose

duties required in-person interaction with patients and staff and whose exemption

requests thus presented an undue hardship to the University:

| Plaintiff | Position | Role Risk | Status | Source |
|---|---|---|---|---|
| Dr. Jane Doe 1 | PICU doctor, Children's Hospital Colorado Springs | Daily care for patients 3-4 days to 21 years old; many unvaccinated | **Terminated** February 2, 2022 | App.Vol. VI 1279-80,1344; IPA Mot. Ex. 3 (Doc. No. 010110644452) |
| Dr. Jane Doe 2 | Pediatric Anesthesiologist | Daily care in and around mouths and noses of young, ill patients; many unvaccinated | **Resigned** in lieu of termination before the September 24 Policy was implemented | App.Vol. VI 1279-81 |
| Dr. Jane Doe 3 | Rheumatologist | Daily care for immunocompromised and older persons, both at higher risk for poor COVID-19 outcomes | **On unpaid leave** | App.Vol. VI 1279, 1281, 1318, 1329, 1331; IPA Mot. Ex. 5 at ¶ 2 (Doc. No. 010110644454) |
| Jane Doe 5[8] | Program Coordinator | Work includes on-site administrative functions | **Granted temporary remote work** with a 10% pay reduction | App.Vol. VI 1279, 1282, 1329, 1333 |

[8] At the time of the briefing below, Jane Doe 5 had been accommodated with 90% remote work and thus, 90% pay. While the Court must consider the information available to the District Court in rendering its decision, in candor to the tribunal, the University respectfully notes that since that time, Jane Doe 5 has been able to be accommodated to 100% and her rate of pay reflects the same.

19

| | | | | |
|---|---|---|---|---|
| | | | since some duties cannot be performed remotely | |
| Jane Doe 9 | Data & Analytics Team Research Assistant | Duties require on-campus presence and direct contact with others | **Terminated due to failure to follow policy** after she came to campus unmasked and unvaccinated | App.Vol. VI 1279, 1282-83, 1383 |
| Jane Doe 10[9] | Clinical Research Manager, Colorado Cancer Center | Cancer patients are at great risk for adverse effects from COVID-19; job requires in-person interaction with staff and direct patient care | **FMLA leave through March of 2022**; to be terminated if she remains unvaccinated | App.Vol. VI 1279, 1283, 1318, 1329, 1335 |
| Jane Doe 11 | Psychiatric Mental Health Nurse Practitioner | Work requires interactions with those with mental health problems that place them at higher risk of adverse outcomes from COVID-19 | **Terminated** January 31, 2022 | App.Vol. VI 1279, 1283-84, 1329, 1337; IPA Mot. Ex. 4 (Doc. No. 010110644453) |

---

[9] While the Court must consider the information available to the District Court in rendering its decision, in candor to the tribunal, the University respectfully notes that Jane Doe 10 remained on FMLA leave through April 15, 2022.

## V.     The September 24 Policy & Students

Students are ineligible for religious exemption under the September 24 Policy. App.Vol. VI 1377, 1348-49, 1390. This policy change was made in response to rising numbers of infection, and it furthers the University's goal of requiring as many students as possible to get vaccinated to stop the spread of COVID-19 and reduce the severity of COVID-19's effects at Colorado's only medical school. App.Vol. VI 1348-50. Medical students treat patients. App.Vol VI 1371-72. Assuming no undue hardship to the University, legally required medical accommodations remain available only when "vaccination is absolutely contraindicated due to other medical conditions" and would jeopardize the life or health of the recipient. App.Vol VI 1376, 1348, 1364-65. The status of the student-Plaintiffs is summarized below:

| Name | Year and Program | Status | Source |
|---|---|---|---|
| Jane Doe 7[10] | Y4 Dental | **Vaccinated**; contracted COVID-19 and was temporarily unable to take the vaccine | App.Vol. VI 1285-86; Resp. re IPA, Ex. T at 10-11, 37-38 (Doc. No. 010110648416); Resp. re IPA, Ex. U (Doc. No. 010110648417); Op. Br. at 29 n.10 |
| Jane Doe 8 | Public Health undergraduate at University College Denver | **Taking classes at Denver** (and exempt); disenrolled from one in-person graduate class at Anschutz campus | App.Vol. VI 1286; Resp. re IPA, Ex. T at 11, 38-40 (Doc. No. 010110648416) |
| John Doe 1 | Y1 Medical | **Selected one-year leave of absence** after request denied under superseded September 1 Policy | App.Vol. VI 1286-87, 1371-72; Resp. re IPA, Ex. T at 12, 47, 49, 68 (Doc. No. 010110648416) |
| John Doe 6 | Y1 Master's of Anesthesiology | Request denied "because of the undue burden it would cause to the Program's ability to provide safe patient care"; **dismissed** | App.Vol. VI 1287; Resp. re IPA, Ex. T at 14, 231-34 (Doc. No. 010110648416) |

---

[10] Jane Doe 7 has taken the vaccine but alleges she faces potential future harm if required to take a booster. Op. Br. at 29 n10. The University does not require booster shots. Surreply, Doc. No. 010110654459, at 3; Surreply Ex. BB, Doc. No. 010110654461, ¶¶ 13-14; https://www.cuanschutz.edu/ coronavirus/updates#ac-chancellors-message-masks-boosters-campus-protocols-testing-feb-28-2022-0. Accordingly, no potential injunctive relief is available to Jane Doe 7.

# ARGUMENT

## I.    Plaintiffs' request for injunctive relief related to the September 1 Policy is moot.

The District Court twice considered injunctive relief in connection with the September 1 Policy and twice denied that relief as moot. First, the District Court evaluated the policy as it pertained to Plaintiffs Dr. Jane Doe 1, a pediatric intensive care physician employed by Defendant University of Colorado, and John Doe 1, a medical student at Anschutz School for Medicine, both of whom requested and were denied religious exemptions under the September 1 Policy. App.Vol. III 625. As a result of their refusal to follow the September 1 Policy, Dr. Jane Doe 1 was placed on indefinite administrative leave and Plaintiff John Doe 1 took a leave of absence. *Id.*

The District Court correctly denied injunctive relief relating to the September 1 Policy because that policy had already been rescinded and replaced by the time Plaintiffs filed their complaint and motion for preliminary injunction. Plaintiffs did not dispute these contentions, nor did they did present any evidence that the September 1 Policy would ever be reinstated. App.Vol. III 624-26; *see Rio Grande Silvery Minnow*, 601 F.3d at 1118 ("[S]elf-correction . . . provides a secure foundation for mootness so long as it appears genuine."). On the record before it, the District Court correctly concluded that Plaintiffs "concede[d] that the

23

September 24 Policy amended and superseded the prior policy," which mooted their request for injunctive relief. The District Court also found that no evidence in the record suggesting that "Defendants might reinstate the September 1 policy." App.Vol. III 626 (District Court finding "there is no indication on the current record that Defendants might reinstate the September 1 policy as conditions related to the Covid-19 pandemic evolve").

The District Court again considered the September 1 Policy when Plaintiffs amended their complaint and filed a renewed motion for preliminary injunction. Rejecting Plaintiffs' argument that the September 24 Policy "did not moot the original harm inflicted by" the September 1 Policy, App.Vol. VI 1400, the District Court determined there was "no argument or evidence that the September 1 Policy continues to be in effect or is likely to be reinstated." App.Vol. VII 1667. Because the September 24 Policy replaced the September 1 Policy prior to suit, and because there was no evidence that the old policy would ever be reinstated, enjoining the University from enforcing the September 1 Policy would have no effect in the real world and Plaintiffs' claim was moot. App.Vol. VII 1667-68.

On appeal, Plaintiffs likewise cannot point to any evidence that the September 1 Policy will be reinstated. Nor have they demonstrated how enjoining the University from enforcing the now-defunct September 1 Policy will have any

practical effect in the real world. *See Rio Grande Silvery Minnow*, 601 F.3d at 1112. Plaintiffs focus on Jane Does 2 and 9, arguing that "Defendants did not reconsider [under the September 24 Policy] the requests by Jane Does 2 and 9, who had since resigned and been terminated, respectively." App.Vol. VII 1666. Plaintiffs insist that the September 1 Policy must be enjoined in order to restore these two persons to their pre-September 1 status. But there is no meaningful injunctive relief the Court can grant to individuals who have already separated from the University. The University already found that it could not accommodate Dr. Jane Doe 2 absent undue hardship, App.Vol. VI 1280-81, and there is no reason to believe it would conclude otherwise through post-separation review under the September 24 Policy since her core duties include minor patient care. Moreover, since Jane Doe 9 was terminated for separate reasons—including for failing to wear a mask and observe social distancing protocol on campus while she was unvaccinated, App.Vol. VI 1279, 1282-83, 1383-84; Op. Br. at 27—she would not be able to regain her position even irrespective of the September 1 Policy.

Plaintiffs have also not identified any clear error in the District Court's factual findings relating to the September 1 Policy, nor established any error or lack of rational basis in the court's legal conclusions as to that policy. Plaintiffs did

not present any evidence that Defendants will ever reinstate the September 1 Policy—to the contrary, the uncontroverted evidence is that the University vehemently denies any such intention and has maintained the September 24 Policy for the past seven months—or show how enjoining the September 1 Policy would have any "effect in the real world." *See Rio Grande Silvery Minnow*, 601 F.3d at 1112. Plaintiffs thus fall far short of the heightened standard they must meet for a mandatory injunction.

In sum, the District Court correctly concluded that Plaintiffs' claim for injunctive relief from the September 1 Policy is moot and should be denied.

## II.    Plaintiffs are unlikely to succeed on the merits.

Plaintiffs fail to establish that the District Court abused its discretion in denying Plaintiffs' preliminary injunction motions. *See Mrs. Field's Franchising*, 941 F.3d at 1232. Plaintiffs did not identify any clear error in the District Court's factual findings. Nor did they show that the District Court erred in determining that Plaintiffs were unlikely to succeed on the merits of their claims under either the September 1 Policy or the September 24 Policy. *See id.* at 1232-33.

### A.    The court properly applied rational basis review.

The Constitution permits general regulations that incidentally burden religious practices. *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990). "[T]he right of

26

free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id*. (quotation omitted). "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). A "neutral law of general applicability" is subject to rational basis review. *Smith,* 494 U.S. at 878; *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) ("A neutral law of general applicability is subject to rational basis review even if it incidentally burdens a particular religious practice." (quotation omitted)).

### 1.    The September 24 Policy is neutral on its face and as applied.

In evaluating neutrality, the Court analyzes both whether the law is facially neutral and whether the government acts in "a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Lukumi*, 508 U.S. at 533. The September 24 Policy is neutral on its face since it applies to anyone who works or learns on the Anschutz Campus or off campus in connection with CU Anschutz programs "who currently or may in the future access any CU Anschutz facility or in any CU Anschutz program, or whose employment or academic

activities may require in-person interaction with other CU Anschutz employees, students, patients, study subjects, or members of the public, regardless of location." App.Vol. I 293.

Nothing in the plain language of the September 24 Policy is intolerant of religion or singles out religious practices for disfavored treatment because of their religious nature. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). The terms of the mandate do not make any reference to "a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533 (describing minimum requirement of facial neutrality).

Nor have Plaintiffs shown a likelihood of establishing that Defendants implemented the September 24 Policy with the aim of suppressing religious belief, rather than protecting the health and safety of students, staff, and the community. *Id.* at 533–42 (examining direct and circumstantial evidence in the record to determine the object of a law). Plaintiffs argue that the September 24 Policy is not neutral because it provides religious exemptions to employees but not students. Op. Br. at 46. This distinction, however, is insufficient to establish that the September 24 Policy is not neutral, because although the policy distinguishes employees from students, it does not single out religion or religious practices. *See Does 1-6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021).

28

The University provided a lawful, secular basis for distinguishing between employees and students: the two groups are legally and factually dissimilar. As the District Court noted, Defendants granted religious accommodations to employees in compliance with Title VII of the Civil Rights Act of 1964, which protects employees, not students, and requires that employers offer a reasonable accommodation to resolve a conflict between an employee's sincerely held religious belief and a condition of employment, unless such accommodation would create an undue hardship for the employer's business. App.Vol. VII 1671 ("[T]he September 24 Policy treats employees and students differently because of Title VII of the Civil Rights Act of 1964, which protects the former but not the latter.").

Contrary to Plaintiffs' assertions, the Constitution simply does not require schools to provide students religious exemptions from mandatory vaccination. *See, e.g.*, *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) (upholding a vaccine policy permitting religious accommodations for employees but not students); *Klaassen v. Trs. Of Ind. Univ.*, 549 F. Supp. 3d 836, 890 (N.D. Ind. July 18, 2021) ("[C]ourts have consistently held that schools that provided a religious exemption from mandatory vaccination requirements did so above and beyond that mandated by that Constitution."). And factually, the University's employees and its students are not similarly situated. While some employees may

29

perform their work remotely, students, who are in the process of learning their chosen professions, have necessary in-person clinical responsibilities.

Accordingly, Plaintiffs have not demonstrated that offering religious accommodations only to employees amounts to treating comparable secular activity more favorably than religious exercise. Plaintiffs' citations to the dissenting opinion in *Doe*, Op. Br., at 47, and Justice Gorsuch's dissent in *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021), are unpersuasive and insufficient to establish error by the District Court. Those cases, and therefore the dissents upon which Plaintiffs rely, are distinguishable from the claim Plaintiffs advance here, namely, that providing religious accommodations for employees in compliance with Title VII but not to students renders the September 24 Policy non-neutral and therefore subject to strict scrutiny.

Plaintiffs also argue that events leading to the September 24 Policy "belies its neutrality" and that the court "must 'survey meticulously' the direct and circumstantial evidence and determine if it nonetheless targets religion." Op. Br. at 49 (quoting *Lukumi*, 508 U.S. at 534). But the District Court already reviewed the policy's history and determined that nothing in the record indicates that the University acted for any reason except to protect the wellbeing of the students, staff, and community from contracting and spreading COVID-19 during an

30

unprecedented pandemic. *See* App.Vol. VII 1670 ("Contrary to what Plaintiffs imply, the fact that the University amended its policy while navigating a monthslong global pandemic does not show that its reasons for denying religious exemptions for students are pretextual."). Plaintiffs have failed to show that the District Court's decision "rests on an erroneous legal conclusion or lacks a rational basis in the record." *Mrs. Field's Franchising, LLC*, 941 F.3d at 1232 (quotation omitted).

Plaintiffs next argue that the University is using "religious discrimination" as the means to an entirely secular end—"complying with Title VII and campus 'health.'" Op. Br. at 48 (citing *Shrum v. City of Cowetta*, 449 F.3d 1132 (10th Cir. 2006)). Plaintiffs insist that the September 24 Policy is "*expressly* 'making [students] choose between [their] duties as a [student] and [their] duties as [religious believers].'" Op. Br. at 49.

Those arguments fail because Plaintiffs do not—and cannot—show that the University was motivated by religious discrimination when it enacted the September 24 Policy. Unlike the facts in *Shrum*, there is no evidence that Plaintiffs' religious views motivated the University to enact the September 24 Policy in order to force Plaintiffs to either withdraw from school or resign from their positions with the University. To the contrary, the record demonstrates that

31

the University enacted its vaccination policy in response to an unprecedented global health crisis caused by COVID-19, which hit Colorado particularly hard, in order to protect the health and safety of its employees, students, patients, and community, and not because of any animosity it had towards Plaintiffs' religious beliefs.

Consistent with the evidence in the record before it, the District Court correctly concluded that "Plaintiffs have not shown a likelihood of establishing that Defendants implemented the September 24 Policy 'with the aim of suppressing religious beliefs, rather than protecting the health and safety of students, staff, and the community.'" App.Vol. XII 1670 (citing *Doe*, 19 F.4th at 1177). None of Plaintiffs' arguments establish that the District Court abused its discretion in holding that the September 24 Policy is neutral.

### 2.    The September 24 Policy is generally applicable.

Plaintiffs next argue that the September 24 Policy is not generally applicable, repeating many of their neutrality arguments.[11] None of these arguments have merit.

---

[11] As discussed above, Plaintiffs interject new information on appeal that was not before the District Court below—for example, assertions about various aspects of the pandemic, including the current percentage of vaccinated employees and students, present levels of COVID-19 infection, a booster mandate and

"To be generally applicable, a law may not selectively burden religiously motivated conduct while exempting comparable secularly motivated conduct." *Mills*, 16 F.4th at 29. A law may not be generally applicable if it (1) "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" or (2) "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877.

The District Court's determination that the September 24 Policy is generally applicable even though it permits religious exemptions for employees but not students is well supported by case law. *See* App.Vol. VII 1671-73. The University is permitted to treat different categories of persons differently for non-religious reasons without violating the general-applicability requirement. *See, e.g.*, *Doe*, 19 F.4th at 1180 (upholding vaccine policy permitting religious accommodations for employees but not students).

Plaintiffs next claim that the September 24 Policy prohibits religious conduct while permitting secular conduct that undermines the government's

---

unvaccinated patients. Op. Br. at 32 n12, 24 n13, 33 n14, 51-52. Because the Court's review is limited to the evidence before the district court at the time of the preliminary injunction, the University has responded only to those facts and arguments presented to the District Court.

asserted interests in a similar way. Plaintiffs point to two purported examples of this: a fourth-year medical student who, after receiving a medical exemption, was permitted to participate in medical rounds, App.Vol. I 232, ¶ 9, and a second student who was initially granted a medical exemption and permitted in a clinical setting but later removed from that setting and reevaluated under the September 24 Policy. *See* App.Vol.VI 1393 ¶¶ 3, 4. In addition to these two students, the University also initially allowed some of the Plaintiffs to continue working past the September 1 vaccination deadline, at least temporarily. App.Vol. VII 1673 (citing App.Vol. V. 1045-45, ¶ 74, 1082, ¶ 185). The District Court acknowledged these hiccups, found that Defendants had corrected them, *see* App.Vol. 1673 citing App.Vol. 1299, and concluded that "at present, [u]nvaccinated employees and students are not permitted to work in facilities with immunocompromised patients." App.Vol. VI 1673 (quotation omitted).

Additionally, the District Court noted that under the September 24 Policy, medical and religious accommodations undergo the same review process. App.Vol. VII 1673. The court determined based on the "current record" before it that "although the University has made adjustments to its response to the Covid-19 pandemic, it has now settled on enforcing the vaccine mandate pursuant to the September 24 Policy, which is generally applicable." App.Vol. VII 1673-74.

34

Plaintiffs have not identified any clear error in those factual findings, nor shown that the court's conclusion that the September 24 Policy is generally applicable rests on an erroneous legal conclusion or lacks a rational basis in the record. Accordingly, the District Court correctly concluded that Plaintiffs "are not likely to succeed in establishing that the policy is not generally applicable." App.Vol. VII 1674.

**B.    The September 24 Policy survives rational basis review.**

Plaintiffs never argued below that either the September 1 Policy or the September 24 Policy was not rational. *See* App.Vol. VII 1668 (District Court order stating that "Plaintiffs have not argued that the September 24 Policy is not rational"). Instead, Plaintiffs argued that the policies were not neutral or generally applicable and therefore subject to strict scrutiny review. *See* App.Vol. I 204-25; App.Vol. IV 970-72, 976-81, 983-85. The District Court disagreed, holding that the September 24 Policy was neutral and generally applicable, and therefore subject to rational basis review. Like other federal courts that have addressed similar issues, the District Court held that the September 24 Policy was rational. *See* App.Vol. VII 1668 (citing *Doe*, 19 F.4th 1173, 1180; *Kane v. De Blasio*, 19

35

F.4th 152, 166 (2d Cir. 2021); *We The Patriots*, 17 F.4th at 290; *Mills*, 16 F.4th at 32).[12]

For the first time on appeal, Plaintiffs now argue that the September 24 Policy fails rational basis scrutiny because three Plaintiffs "work entirely off campus, including two who were eligible for or actually received religious exemptions from their physical places of work" and because "Anschutz employees and students may freely work among the unvaccinated at affiliate sites." Op. Br. at 39; *see id.* at 64 (arguing that classifying Jane Does 1 and 11 in the same category as unvaccinated employees who work on the Anschutz Campus is entirely attenuated from the Policy's goal . . . to protect the health and safety of University of Colorado *Anschutz Campus*").

---

[12] Federal courts overwhelmingly agree that vaccine mandates pass rational basis review. *See, e.g.*, *Doe*, 19 F.4th at 1180; *Mills*, 16 F.4th at 32; *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 594 (7th Cir. 2021); *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021); *Dixon v. De Blasio*, __ F. Supp. 3d __, No. 21-cv-5090, 2021 WL 4750187, at *5 (E.D.N.Y. Oct. 12, 2021), appeal dismissed, *Dixon v. DeBlasio*, No. 21-2666, 2022 WL 961191 (2d Cir. March 28, 2022)  (appeal dismissed as moot because the challenged restrictions were rescinded, district court order vacated); *Harris v. Univ. of Mass., Lowell*, __ F. Supp. 3d __, No. 21-cv-11244, 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021); *Valdez v. Grisham*, __ F. Supp. 3d at __, No. 21-cv-783, 2021 WL 4145746, at *9 (D.N.M. Sept. 13, 2021); *Am.'s Frontline Doctors v. Wilcox*, No. EDCV 21-1243 JGB, 2021 WL 4546923, at *3-5 (C.D. Cal. July 30, 2021).

Below, the District Court considered similar assertions from Plaintiffs, including that "employees and students are granted religious exemptions more readily on campuses other than on the Anschutz Medical Campus."[13] App.Vol. VII 1671 n3. The court concluded that "these underdeveloped assertions do not provide a basis for finding that the September 24 Policy, which applies solely to the Anschutz Campus, is not neutral or generally applicable as to Plaintiffs, particularly in the context of seeking a preliminary injunction, which requires Plaintiffs to establish a clear and unequivocal right to relief." *Id.* (citing *Shrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005)). On appeal, Plaintiffs try to further develop their assertions by arguing additional facts not in the record below, for example, about the number of religious exceptions allegedly provided at other

---

[13] Plaintiffs argue that the University of Nebraska's alleged grant of 200 religious exemptions is dispositive here, based on an attestation of their counsel. Op. Br. at 31, 63. The number of vaccination exemptions at Nebraska's medical school is irrelevant to the September 24 Policy, which was implemented in response to circumstances in Colorado. Setting aside issues of authenticity, foundation, and relevance, what another state's university could or could not accommodate based on differing populations, geography, health risks, etc., is irrelevant. The uncontroverted evidence before the District Court confirms that the University, in consultation with renowned medical experts, carefully and narrowly tailored its September 24 Policy to the circumstances it confronted *in Colorado*, including nearly 1 million confirmed cases (nearly 50% of Nebraska's entire population), the September upward turn in cases, the 10th highest COVID-19 hospital demand in the United States, and greater than 90% hospital bed occupancy. App.Vol. VI 1316-20.

institutions like UC Health and Colorado Mental Health Institute at Pueblo. *See* Op. Br. at 58, 63.

This Court should not consider this additional information, which was not before the District Court. *See N.M. Dept't of Game & Fish*, 854 F.3d at 1240 (the court does not consider post-injunction events in reviewing a denial of a preliminary injunction). But even if did, it would make no difference because Plaintiffs fail to demonstrate that the number of exemptions provided by other schools or employers has any bearing on whether the September 24 Policy is neutral or generally applicable. The University is not obligated to follow the policy choices of other States, which presumably are tailored to conditions in those places. State public-health officials have the greatest latitude when, as here, there remains significant uncertainty about the best manner of responding to a devastating infectious disease. *See Marshall v. United States*, 414 U.S. 417, 427 (1974) ("[When officials] undertake[] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad.").[14]

---

[14] Courts should generally defer to "the reasonable medical judgments of public health officials." *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 288, (1987). The Court should refuse Plaintiffs' invitation to second-guess the appropriateness of the September 24 Policy as the most effective means for the University to protect the health of its patients, employees, students, and community. *See Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 828 (D. Colo. 2020) ("It isn't the job of

Plaintiffs have not established that the District Court abused its discretion in holding that the September 24 Policy was rational. App.Vol. VII 1668. ("Plaintiffs have not argued that the September 24 Policy is not rational, and, in accord with other federal courts that have reached the issue, this Court has no trouble finding that it is.").

### C.    The September 24 Policy also satisfies strict scrutiny.

Although the September 24 Policy is neutral and generally applicable and therefore subject to rational basis review, it also satisfies strict scrutiny. The University has a compelling interest in protecting the health and safety of its patients, employees, students, and community, as the District Court recognized. *See* App.Vol. VII 1674 ("Defendants have a compelling interest in ensuring that employees and students associated with Colorado's preeminent medical campus are vaccinated against Covid-19—for their patients' health and safety as well as their own.").

---

the judiciary to second-guess the 'wisdom, need, or appropriateness' of the measures taken by a state to protect the health of its people during a pandemic." (quoting *Edwards v. California*, 314 U.S. 160, 173 (1941)), *appeal dismissed sub nom. Church v. Polis*, No. 20-1377, 2020 WL 9257251 (10th Cir. Dec. 23, 2020).

In September 2021, when the University's policies went into effect, the pandemic had begun an upward turn in Colorado and projections showed increasing numbers of infections, hospitalizations, and deaths. App.Vol. VI 1318-19, ¶ 28. Experts predicted that "approximately 1 in every 99 (or about 0.5%) Coloradoans were infectious, which was in the upper range of prevalence rates of infection in 2021." App.Vol. VI 1316, ¶ 18.

The situation continued to deteriorate and severely overwhelmed Colorado's hospital systems. On October 31, 2021, Governor Polis signed Executive Order D 2021 135, authorizing the Colorado Department of Public Health and Environment to order hospitals to transfer or cease admission of patients to respond to the growing COVID-19 disaster. App.Vol. VI 1319, ¶ 29. Hospitalizations continued to increase, and the number of available hospital beds correspondingly decreased, prompting Governor Polis to amend and extend Executive Order D 2021 135 on November 29. App.Vol. VI 1319-20, ¶¶ 29-32; Executive Order D 2021 138. As of the week of Thanksgiving, about 93% of acute care hospital beds and 94% of ICU hospital beds in Colorado were in use. App.Vol. VI 1320, ¶ 32. Colorado anticipated the tenth highest hospital demand nationwide. App.Vol. VI 1320, ¶ 31.

In the midst of all that, the University implemented the September 24 Policy to achieve the compelling interest of stemming the transmission of COVID-19.

40

"COVID-19 vaccines are a key component in controlling the COVID-19 pandemic both in terms of transmission rate and the severity of COVID-19 symptoms." App.Vol. VI 1322, ¶ 40. Consistent with CDC advice and reporting that the University received prior to implementing the September 24 Policy, "the greatest risk of transmission [of COVID-19] is among unvaccinated people who are much more likely to get infected, and therefore transmit the virus."[15] *See* App.Vol. VI 1302 (citing August 26, 2021 CDC report).

The September 24 Policy is also narrowly tailored to Defendants' compelling interest in reducing the spread of COVID-19, because it provides religious accommodation to employees and medical accommodations to employees and students who can perform their work remotely or in isolation. Limiting in-person contact to vaccinated individuals is narrowly tailored to the Anschutz Campus' compelling interest because employees and students have a greater risk of

---

[15] The Fifth Circuit's decision in *U.S. Navy Seals 1-26 v. Biden*, No. 22-10077, 2022 WL 594375, at *12 (5th Cir. 2022), does not support Plaintiffs' argument that the University lacks a compelling reason to make them vaccinate when many of Plaintiffs have "worked heroically on the front lines of healthcare through 18 months of the pandemic" and "there [is] no evidence that [they] have contributed to the spread of COVID-19." Op. Br. at 61-62. The Supreme Court last month granted the government a partial stay of the district court's order "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U. S. Navy Seals 1-26,* No. 21A477, 2022 WL 882559 (U.S. Mar. 25, 2022).

contracting and spreading COVID-19 if they interact with unvaccinated patients, coworkers, and classmates.

## III.    Plaintiffs cannot establish irreparable harm.

A plaintiff only suffers irreparable harm when the claimed injuries cannot be adequately remedied or when complete relief cannot be granted following a determination on the merits. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). On appeal, as they did below, Plaintiffs argue that their "loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Op. Br. at 65 (quotation omitted). But the District Court held that Plaintiffs have failed to demonstrate a likelihood of success on their constitutional claims, such that their asserted harm is not of a constitutional dimension. App.Vol. VII 1674. As explained above, that conclusion is correct.

Ultimately, Plaintiffs cannot establish that they will suffer irreparable harm if the September 24 Policy is not enjoined.[16] Plaintiffs' alleged injuries are "based

---

[16] Plaintiffs have also not established clearly and unequivocally that enjoining the September 1 Policy is necessary to prevent irreparable harm. App.Vol. VII 1668. The complained-of harms relating to the September 1 Policy include taking an indefinite administrative leave with impending termination (Plaintiff Dr. Jane Doe 1) and leave of absence from school (Plaintiff medical student John Doe 1), and resignation in lieu of termination (Jane Doe 2). App.Vol. III 625. These alleged

on loss of employment and professional standing or delays and is the type of harm that is typically compensable with money damages." *Id*. (citing *We The Patriots*, 17 F.4th at 294). This type of harm does not warrant the extraordinary remedy that Plaintiffs seek. *See We The Patriots*, 17 F.4th at 294.

Accordingly, the District Court properly denied Plaintiffs' request for a preliminary injunction for the additional reason that they have not shown a likelihood of irreparable harm.

## IV.    The balance of harms and public interest weigh strongly in favor of denying the relief requested by Plaintiffs.

The balance of the harms and public interest factors merge when the government is a party. *Nken v. Holder*, 566 U.S. 418, 435 (2009). These factors require the Court to balance the harm to Plaintiffs of not obtaining the injunctive relief they request against the University's harm (and thus the harm to the public interest) if the injunction is granted. *Kobach*, 840 F.3d at 755-56.

The public interest in limiting the transmission of COVID-19 cannot be overstated. That interest would directly suffer from the injunction Plaintiffs seek.

---

harms do not constitute the irreparable harm required for the disfavored injunction Plaintiffs request. The District Court correctly determined that "Plaintiffs' alleged harm based on loss of employment and professional standing or delays and is the type of harm that is typically compensable with money damages." App.Vol. VII 1674 citing *See We the Patriots*, 17 F.4th at 294.

43

COVID-19 has had a catastrophic impact on all aspects of life for more than two years. On October 25, 2021, when the District Court first denied Plaintiffs' motion to enjoin the September 1 Policy, there were approximately 44 million cases of COVID-19 nationwide and nearly 700,000 deaths; of those, Colorado had over 694,349 confirmed cases and approximately 8,065 confirmed deaths. App.Vol. I 241. By the time the District Court denied Plaintiffs' renewed motion, those numbers had increased to 48.5 million cases and nearly 780,000 deaths nationwide and 829,437 confirmed cases and approximately 9,473 deaths in Colorado. App.Vol. VI 1272. By all metrics, the situation was dire. *See supra*, pp. 12-13 (describing rates of infections, hospitalizations and death in Colorado).

Plaintiffs argue that it is in the public interest to prevent a violation of a constitutional right, such that the balancing of harm tips in their favor. Op. Br. at 66. This ignores that the District Court correctly held that Plaintiffs' "asserted harm is not of a constitutional dimension," and that the "Plaintiffs failed to demonstrate a likelihood of success on their constitutional claims." App.Vol. VII 1674.

Given the extraordinary public health crisis, the District Court correctly ruled that public interest and the balance of the equities strongly weigh in favor of denying the requested injunction. Far from meeting the heavy burden they are

44

required to establish in order to obtain the disfavored relief they seek; Plaintiffs fail to show how the District Court abused its discretion in concluding that "Plaintiffs have failed to demonstrate that the public interest weighs in favor of enjoining enforcement of the September 24 Policy." App.Vol. VII 1674.

## CONCLUSION

The District Court did not abuse its discretion in denying Plaintiffs' motions to enjoin the September 1 Policy and the September 24 Policy. Plaintiffs cannot satisfy their burden—much less their heightened burden for a disfavored injunction—to meet any of the criteria for the extraordinary relief they request. The University respectfully requests that the Court affirm the District Court orders.

Respectfully submitted this 18th day of April, 2022.

PHILIP J. WEISER
Attorney General


*/s/ Megan Paris Rundlet*
JACQUELYNN RICH FREDERICKS*
First Assistant Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
GRANT T. SULLIVAN*
Assistant Solicitor General
MEGAN PARIS RUNDLET*
Senior Assistant Solicitor General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor

45

Denver, Colorado 80203
Tel: (720) 508-6171
kit.spalding@coag.gov;
jacquelynn.richfredericks@coag.gov;
grant.sullivan@coag.gov;
megan.rundlet@coag.gov

HERMINE KALLMAN*
University of Colorado
Office of University Counsel
Special Assistant Attorney General
1800 Grant St., Suite 700
Denver, CO 80203
Tel: 303 860-5691
hermine.kallman@cu.edu

GREGORY E. GOLDBERG*
MATTHEW J. SMITH*
Holland & Hart
555 17th Street, Ste 3200
Denver, CO 80202
ggoldberg@hollandhart.com
mjsmith@hollandhart.com

*Counsel of Record for Defendants Board of
Regents, Todd Saliman, Donald Elliman,
Shanta Zimmer, Eric Mediavilla, and Ann-
Michael Holland

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32 and Tenth Circuit R. 32 because it uses 14-point Times New Roman font, a proportionally spaced typeface, and uses 13-point Times New Roman in the two Plaintiff charts.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and this Court's briefing order because it contains 9,760 words, excluding the parts exempted under Fed. R. App. P. 32(f).

*/s/ Megan Paris Rundlet*

Dated: April 18, 2022

## CERTIFICATE OF SERVICE

This is to certify that, on this 18th day of April, 2022, I have provided

electronic service of this DEFENDANTS-APPELLEES' RESPONSE BRIEF upon

all parties below via email through the CM/ECF system:

Peter Breen
Michael McHale
Martin Whittaker
Thomas More Society
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org
privatrecht@gmail.com

Joseph Brown
Theresa Sidebotham
Telios Law
jbb@telioslaw.com
tls@telioslaw.com

Gregory E. Goldberg
Matthew J. Smith
Holland & Hart
555 17th Street, Ste 3200
Denver, CO 80202
ggoldberg@hollandhart.com
mjsmith@hollandhart.com

Hermine Kallman
Office of University Counsel
1800 Grant St, Ste 700
Denver, CO 80203
hermine.kallman@cu.edu

*/ s/ Carmen Van Pelt*